UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PARNELL E. MYLES, JR.,

    Petitioner,

    v.                                                                      Case No. 22-CV-144-SCD

CHRIS BUESGEN,
  *Warden, Stanley Correctional Institution,*

    Respondent.

# DECISION AND ORDER
# DENYING PETITION FOR WRIT OF HABEAS CORPUS

    Parnell Myles, Jr., pleaded guilty in Wisconsin state court to homicide by intoxicated use of a vehicle after a prior intoxicated-driving conviction/revocation. In exchange for that guilty plea, the State agreed to dismiss outright a charge for causing the death of another person while operating a motor vehicle with a revoked driver's license. At the plea and sentencing hearings, however, the trial court misstated the terms of the plea agreement, indicating that the operating-while-revoked charge had been "read in," meaning the judge could deem that charge admitted and consider it at sentencing. At sentencing, both the prosecutor and the trial judge mentioned Myles' revoked status as an aggravating factor, and Myles received a lengthy prison sentence.

    Myles appealed. After the trial court denied his motion for resentencing, Myles' appellate lawyer filed a report indicating that there were no meritorious appellate issues to pursue. The no-merit report addressed two issues: whether Myles could challenge the validity of his guilty plea and whether Myles could challenge his sentence. Myles did not respond to

the no-merit report. Myles' lawyer later filed a supplemental report addressing a third issue: whether Myles could challenge the misstated terms of the plea agreement. The court of appeals agreed that there were no potentially meritorious issues to appeal; the court did, however, amend the judgment of conviction to reflect that the operating-while-revoked charge should have been dismissed outright and not read in. The state supreme court subsequently denied Myles' petition for review, in which he sought to withdraw his plea based on the lack of criminal intent and his trial lawyer allegedly pressuring him to accept the deal.

After exhausting his state post-conviction remedies, Myles filed a petition for a writ of habeas corpus pursuant to § 2254 of the United States code. The court permitted Myles to proceed on two of the four claims raised in the petition: that the plea agreement was breached when the trial court dismissed and read in the operating-while-revoked charge and that critical exculpatory evidence was ignored during the discovery phase of his state case. Myles is not entitled to federal habeas relief on either claim because he procedurally defaulted both claims, he has failed to show an excuse for that default, and the record demonstrates that the plea agreement was not breached. Accordingly, I will deny his petition and dismiss this action.

## BACKGROUND

Myles was involved in a fatal car accident shortly after midnight on June 14, 2017. *See* Respt's Answer Ex. O, ECF No. 13-15. Investigation revealed that Myles had made a left turn into the path of an oncoming moped. The moped struck the side of Myles' SUV, and the driver of the moped later died from his injuries. Video from a nearby surveillance camera showed that the moped had its lights on at that time and appeared to be traveling at a legal speed. A blood draw performed a few hours after the accident revealed Myles had a blood

2

alcohol content of 0.319 percent. *See* Respt's Answer Ex. Q, ECF No. 13-17. Also, Myles' license was revoked at the time due to a prior intoxicated-driving conviction.[1]

The State of Wisconsin charged Myles with homicide by intoxicated use of a vehicle while having a prior intoxicated-driving conviction/revocation, homicide by operating a vehicle with a prohibited BAC after a prior intoxicated-driving conviction/revocation, and causing the death of another person while operating a motor vehicle with a revoked driver's license. *See* Ex. O; *see also* Respt's Answer Ex. B, at 2, ECF No. 13-2. Myles agreed to plead guilty to homicide by intoxicated use of a vehicle. *See* Respt's Answer Ex. M, ECF No. 13-13. At the plea hearing, the State said that it would move to dismiss the operating-while-revoked charge in exchange for Myles' guilty plea. (The other charge was dismissed by operation of law.) *See id.* at 2. The State further said that the plea agreement did not include any specific sentencing recommendation, leaving both sides free to argue. Myles and his lawyer confirmed the State had accurately recited the terms of the plea agreement, both on the record and in the plea questionnaire form. *Id.* at 2–7.

Instead of dismissing outright the operating-while-revoked charge, as the parties had agreed, the trial court indicated that charge would be dismissed and read in at sentencing. Ex. M, at 18–19. The court told Myles that meant it could consider that crime at sentencing. *Id.* at 19. Myles said he understood and answered "yes" when asked if he wanted the court to dismiss and read in the operating-while-revoked charge. Myles' lawyer did not attempt to correct the court's mistake, and the State didn't either. At sentencing, the State and the trial court mentioned Myles' prior revocation for an intoxicated-driving conviction as an aggravating factor for the homicide offense. *See* Ex. N, at 24–26, 58–59. The court sentenced

---

[1] That prior conviction apparently involved prescription pain medication, not alcohol. *See* Respt's Answer Ex. N, at 35–36, ECF No. 13-14.

3

Case 2:22-cv-00144-SCD   Filed 06/11/24   Page 3 of 16   Document 35

Myles to eighteen years, eight months, and three days of initial confinement (one day longer than the victim lived) and ten years of extended supervision. *See id.* at 54–72.

Myles appealed his conviction in state court. He first moved for resentencing, arguing that the trial court erroneously exercised its discretion when it gave controlling weight to the victim's age and imposed an excessively harsh sentence compared to other defendants convicted of the same offense. *See* Respt's Answer Ex. P, ECF No. 13-16. The trial court denied the motion. *See* Ex. Q.

On appeal, Myles' appellate lawyer filed a no-merit report reflecting his belief that a direct appeal would be frivolous. *See* Respt's Answer Ex. F, ECF No. 13-6. Counsel explained why there would be no merit to challenging the validity of Myles' plea or his sentence. Myles received a copy of the report, was advised of his right to respond, and chose not to file a response. *See* Ex. B, at 2.

The Wisconsin Court of Appeals indicated that the exact terms of the plea agreement needed clarification, and so it ordered counsel "to file a supplemental no-merit report addressing whether an arguably meritorious issue exists as to the terms of the plea agreement." Respt's Answer Ex. G, at 1, ECF No. 13-7. The court noted that the plea agreement called for the operating-while-revoked charge to be dismissed outright, but during the hearing Myles mistakenly answered "yes" when the court asked whether that charge should be dismissed and read in. Counsel filed a supplemental no-merit report explaining why there would be no merit to seeking plea withdrawal based on the trial court erroneously reading in the operating-while-revoked charge. *See* Respt's Answer Ex. H, ECF No. 13-8. However, counsel suggested that the judgment of conviction should be corrected to reflect the parties' agreement. The court of appeals accepted the no-merit report and summarily affirmed

4

Case 2:22-cv-00144-SCD   Filed 06/11/24   Page 4 of 16   Document 35

the order denying the motion for resentencing. *See* Ex. B. The court also modified the judgment of conviction to reflect that the operating-while-revoked charge was dismissed outright, not read in for sentencing, and summarily affirmed the judgment as modified.

Proceeding without the assistance of counsel, Myles moved for reconsideration of the court of appeals' order. *See* Respt's Answer Ex. C, ECF No. 13-3. He argued that the court never responded to his request for an extension of time to respond to the supplemental no-merit report. *Id.* at 1–2. The court of appeals acknowledged that it had received the filing but explained that Wisconsin law did not permit a response to a supplemental no-merit report. The court also noted that it had read Myles' filing, which it said did not provide any reason to alter its decision. Myles further argued that the court shouldn't have accepted the no-merit report because he did not understand the read-in designation and because he was pressured by his lawyer to accept the plea agreement. *Id.* at 2–3. The court of appeals rejected both arguments and denied the motion for reconsideration.

After the court of appeals denied his motion for reconsideration, Myles sought an extension of time to file a petition for review. *See* Respt's Answer Ex. I, ECF No. 13-9. The Wisconsin Supreme Court told Myles that the deadline could not be extended, but it accepted Myles' motion as a timely, nonconforming petition, and it ordered Myles to file a statement in support of his petition. *See* Respt's Answer Ex. J, ECF No. 13-10. Myles' statement listed five issues: (1) the offense was erroneously classified as a class C felony; (2) the State and the trial court did not stick to the plea agreement; (3) the trial court's sentence was unduly harsh and excessive; (4) critical exculpatory evidence was ignored during the discovery phase; and (5) the trial court did not exercise fair judgment at sentencing. *See* Respt's Answer Ex. K, ECF No. 13-11. Myles argued that he should be allowed to withdraw his plea because he lacked

5

criminal intent and because his trial lawyer pressured him into accepting the deal. The Wisconsin Supreme Court denied the petition for review, *see* Respt's Answer Ex. D, ECF No. 13-4, and Myles' motion for reconsideration, *see* Respt's Answer Ex. E, ECF No. 13-5.

On February 7, 2022, Myles filed a federal habeas petition alleging four potential grounds for relief: (1) the trial court erroneously exercised its discretion when it gave controlling weight to the victim's age at sentencing; (2) the plea agreement was breached when the trial court dismissed and read in the operating-while-revoked charge; (3) critical exculpatory evidence was ignored; and (4) his conviction should not have been classified as a class C felony because he did not intend to cause the victim's death. *See* Pet., ECF No. 1. The matter was randomly assigned to this court and, upon screening the petition, I noted that Myles couldn't proceed on his first or fourth claims because they were purely state-law issues. *See* Rule 4 Order, ECF No. 4. After Chris Buesgen (the warden of the institution where Myles is confined) filed his answer, *see* ECF No. 13, Myles filed a brief in support of his petition, *see* ECF No. 28; Buesgen filed a brief opposing the petition, *see* ECF No. 31; and Myles filed a reply brief, *see* ECF No. 34. Both parties have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 7.

## DISCUSSION

Myles claims that the State breached the plea agreement when the prosecutor referred to his revoked driving status at the sentencing hearing and that critical exculpatory evidence was ignored during the discovery phase of his state case.

### I. Myles Is Not Entitled to Habeas Relief on His Plea Agreement Claim

Buesgen first argues that Myles procedurally defaulted his plea agreement claim. "Before seeking relief in federal court, a habeas petitioner must first give the State the

6

opportunity to address and correct any alleged violation of his federal rights." *Brown v. Eplett*, 48 F.4th 543, 552 (7th Cir. 2022); *see also* 28 U.S.C. § 2254(b), (c). This means that the petitioner "must fairly present his federal claim through one complete round of review in state court, 'thereby alerting that court to the federal nature of the claim.'" *Id.* (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). "To satisfy that requirement, he must present both the operative facts and the legal principles that control each claim to the state judiciary." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999); *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996)). "If the petitioner fails to do so and the opportunity to raise that claim in state court has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition." *Lieberman v. Thomas*, 505 F.3d 665, 669–70 (7th Cir. 2007) (citing *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004)). "Procedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013) (citations omitted).

Myles did not fairly present his plea agreement claim through one complete round of state-court review. At the Wisconsin Court of Appeals' request, Myles' appellate lawyer explained why he believed there would be no merit to appealing the terms of the plea agreement. The court accepted the no-merit report and Myles, then proceeding without the assistance of counsel, filed a petition for review with the Wisconsin Supreme Court. In his statement in support of his petition for review, Myles listed five issues, including whether the State and the trial court stuck to the plea agreement. However, Myles did not reference the

7

alleged breach anywhere else in that filing. Myles therefore failed to present the operative facts and the legal principles that control his plea agreement claim to the state supreme court. This finding distinguishes our case from *Gonzales v. Eplett*, 77 F.4th 585 (7th Cir. 2023), the case Myles relies upon.

Myles insists that he fairly presented a due process claim to the Wisconsin Supreme Court. That's true. But that due process claim concerned his trial lawyer allegedly misrepresenting the amount of prison time he would receive and pressuring him to accept the plea deal. *See* Ex. K, at 6–8. Myles, however, didn't mention the read-in issue. Thus, the substance of the due process argument here is not the same as the substance of the due process argument made in state court. *See Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (explaining that, while a habeas petitioner "must present the same factual and legal bases to the federal court that he presented to the state court," he "may reformulate his claims somewhat, so long as the substance of his argument remains the same") (citations and internal quotation marks omitted).

Buesgen asserts that it's too late for Myles to exhaust his plea agreement claim now, as it would be procedurally barred by section 974.06 of the Wisconsin statutes. Under Wisconsin's post-conviction rules, Myles "had to raise all available claims for relief in his first postconviction motion or on direct appeal." *Garcia v. Cromwell*, 28 F.4th 764, 767 (7th Cir. 2022) (citing Wis. Stat. § 974.06; *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162–63 (Wis. 1994)). Myles pursued both post-conviction relief and a direct appeal, but he did not sufficiently allege in his petition for review that the State breached the plea agreement. "Section 974.06(4) bars successive postconviction motions unless the defendant can demonstrate a 'sufficient reason' for failing to raise the claim earlier." *Id.*

8

Myles presents two reasons why his plea agreement claim would not be procedurally barred in state court. First, he says that the procedural bar of *Escalona-Naranjo* does not apply to no-merit appeals, citing *Page v. Frank*, 343 F.3d 901 (7th Cir. 2003). But *Page* addressed a different issue: whether the state court's finding that the defendant waived his ineffective assistance of appellate counsel claim when he failed to identify it in response to his lawyer's no-merit report rested on independent and adequate state-law grounds. *Id.* at 907–09. That issue is not present in this case; Myles never filed a motion in state court alleging ineffective assistance of post-conviction/appellate counsel,[2] so the state courts have never had an opportunity to rule on that claim.[3]

Second, Myles appears to allege ineffective assistance of appellate counsel as the reason why he failed to properly raise his plea agreement claim earlier. In other words, Myles faults his appellate lawyer for not asserting that his trial lawyer should have objected to the breached plea agreement. Although "[i]n an appropriate case, ineffective assistance of post-conviction counsel may qualify as a sufficient reason to excuse a procedural default," *Garcia*, 28 F.3d at 767 (citing *State v. Romero-Georgana*, 2014 WI 83, ¶ 36, 849 N.W.2d 668, 678), Myles did not file such a collateral attack in state court. Because Myles did not allege in state court that his appellate lawyer provided ineffective assistance of counsel, he cannot rely on that alleged constitutional error to pass through Wisconsin's procedural bar. Myles does not offer any other reasons for not pursuing his plea agreement claim during his initial appellate

---

[2] Myles had the same lawyer for post-conviction and appellate proceedings.

[3] Myles did previously seek to stay this action so that he could return to state court to challenge the effectiveness of his appellate lawyer and then add that claim to his habeas petition. The court, however, denied the request because the one-year limitation period had already expired with respect to his proposed ineffective assistance of appellate counsel claim and because that claim would not relate back to the date of his original petition. *See* Order, ECF No. 27. The court also told Myles that the stay denial did not preclude him from seeking relief in state court. But it appears Myles has chosen not to pursue such relief.

proceedings. Thus, it is clear that the state courts would now find Myles' plea agreement claim procedurally barred.

Myles has not overcome that default. Although he does not explicitly address cause and prejudice, nothing presented in his briefs would satisfy that standard. As explained above, the alleged ineffective assistance of appellate counsel is itself defaulted because Myles did not pursue that claim in state court. And Myles cannot establish cause and prejudice for *that* default, as he would have had to pursue that claim on his own without the benefit of legal assistance, and his own failure to pursue such relief is not an "external" impediment. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) ("[A] claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well."); *Garcia*, 28 F.4th at 775 ("But errors by counsel in the first round of postconviction proceedings cannot serve as cause to excuse [the petitioner's] *own* default in the second."). Myles says in his reply brief that barring his federal habeas claims "would present a miscarriage of justice," Petr's Reply 6, but his only explanation is that his claims are actionable. That is not enough to meet the high fundamental-miscarriage-of-justice standard. *See Perruquet*, 390 F.3d at 521–22 (finding that a habeas petitioner had failed to excuse his default where "his arguments as to the prejudice resulting from the default and the prospect of a miscarriage of justice [were] confined to just a few sentences").

Buesgen also argues that, even if Myles had not procedurally defaulted his plea agreement claim, he still would not be entitled to habeas relief. In *Santobello v. New York*, the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or

consideration, such promise must be fulfilled." 404 U.S. 257, 262 (1971). Failure to fulfill such a promise "offends due process." *United States v. Jordan*, 870 F.2d 1310, 1316 (7th Cir. 1989) (citing *Santobello*). *Santobello*, however, does not "place an affirmative duty on the prosecution to discuss all possible ramifications of a defendant's guilty plea. Rather, [it] prohibit[s] false representations and mandate[s] compliance with promises made." *Villanueva v. Anglin*, 719 F.3d 769, 777 (7th Cir. 2013) (quoting *Jordan*, 870 F.2d at 1316). In other words, "the government's obligations . . . will be limited to matters on which [the parties] have actually agreed." *United States v. Morris*, 836 F.3d 868, 871 (7th Cir. 2016) (quoting *United States v. Brown,* 779 F.3d 486, 492 (7th Cir. 2015)). Moreover, a criminal defendant is not entitled to relief "if the breach is insubstantial, immaterial, technical, or cured." *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) (citing *United States v. Diaz-Jimenez*, 622 F.3d 692, 694 (7th Cir. 2010); *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006)).

Here, the terms of the plea agreement were simple, straightforward, and unambiguous: in exchange for Myles pleading guilty to homicide by intoxicated use of a vehicle after a prior intoxicated-driving conviction/revocation, the State agreed to dismiss outright the other two charges. The agreement did not include any specific sentencing recommendation, leaving the State free to argue for any sentence. As Myles and his lawyer confirmed, the State accurately recited the terms of the agreement at the plea hearing and in the plea questionnaire form. The state-court record shows that the State upheld its end of the bargain by moving to dismiss the other two charges. Myles seems to believe that the State also promised not to mention that, at the time of the fatal crash, his license was revoked for a prior intoxicated-driving conviction. But the State never made that promise. And without a promise, there is no breach. *See, e.g.*,

11

*Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 565 (7th Cir. 2018) (petitioner not entitled to habeas relief where the plea agreement was silent on the term he alleged was breached).

Similarly, the plea agreement was not breached when the trial court mistakenly dismissed and read in the operating-while-revoked charge. The court, after all, was not a party to the agreement. Even if the court's mistake could somehow be charged to the State—for example, by not correcting the misstatement—Myles would not be entitled to relief. The court of appeals cured that error by amending the judgment of conviction to reflect that the operating-while-revoked charge was dismissed outright. Myles insists the amendment wasn't enough, but again, his argument depends on the erroneous belief that the State should have been precluded from mentioning his revoked status at the sentencing hearing. The State, however, never agreed to hide that relevant fact from the trial court. Indeed, the prior intoxicated-driving conviction/revocation was the reason why Myles was guilty of a class C felony and not a class D felony. *See* Wis. Stat. § 940.09(1c). The distinction between the crime being dismissed outright and read in therefore did not matter in this case; by pleading guilty to a class C felony, Myles admitted that he had previously been convicted or revoked for an intoxication-related offense. Because the plea agreement was not breached, trial counsel was not ineffective for failing to object to the court mistakenly reading in the operating-while-revoked charge. *See, e.g.*, *Hartjes*, 456 F.3d at 790 (finding that an ineffective assistance claim based on counsel's failure to object to a breached plea agreement collapses if there was no breach).

Accordingly, Myles is not entitled to relief under § 2254 on his plea agreement claim.

## II. Myles Is Not Entitled to Habeas Relief on His Exculpatory Evidence Claim

Myles also claims that his due process rights were violated when critical exculpatory evidence was ignored during his state case. According to Myles, his trial attorney, the prosecutor, and the trial court all viewed a surveillance video that showed Myles making a legal left turn when his vehicle was struck by the moped. Myles indicates that the video does not actually show the point of impact. He also accuses his trial lawyer and the prosecutor of not investigating how fast the moped was traveling at the time of the accident. This evidence is relevant, Myles says, because it shows he was not at fault for the accident. *See* Wis. Stat. § 940.09(2)(a) ("In any action under this section, the defendant has a defense if he . . . proves by a preponderance of the evidence that the death would have occurred even if he . . . had been exercising due care and he . . . had not been under the influence of an intoxicant.").

Buesgen contends that Myles' exculpatory evidence claim fails for several reasons. He first argues that Myles waived this claim when he pleaded guilty to the homicide driving charge. "It is well established that an unconditional plea of guilty operates as a waiver of all formal defects in the proceedings, including any constitutional violations that occurred before the plea was entered." *Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006) (citing *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970)). "However, a defendant does not necessarily waive all constitutional claims when he enters a plea of guilty." *Id.* at 943. For example, "a criminal defendant can challenge his guilty plea if the plea itself was the result of ineffective assistance of counsel." *Avila v. Richardson*, 751 F.3d 534, 535 (7th Cir. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)).

Because Myles unconditionally pleaded guilty in state court, he may attack his conviction only by challenging the state court's jurisdiction or the validity of his plea. His

13

exculpatory evidence claim does neither. That claim is based on an alleged constitutional violation that occurred before he pleaded guilty and that wouldn't affect the court's jurisdiction. Myles does suggest that his trial lawyer didn't sufficiently investigate the fatal crash, but he doesn't assert that the lack of investigation rendered his plea invalid. Indeed, Myles knew about the alleged deficiency when he entered his plea, and he conceded at the plea hearing that the State could prove beyond a reasonable doubt that he caused the victim's death. Moreover, Myles did not raise an ineffective assistance of trial counsel claim in state court or in his federal habeas petition. *See Martin v. Evans*, 384 F.3d 848, 853 (7th Cir. 2004) (finding that a habeas petitioner who fails to present a specific ground of trial counsel's ineffectiveness has waived the issue). Myles therefore waived his right to submit exculpatory evidence when he pleaded guilty.

Buesgen also argues that Myles abandoned his exculpatory evidence claim by not developing it in his federal habeas brief. Myles alleged in his petition that critical exculpatory evidence was ignored during the discovery phase of his state case. However, he did not address this issue anywhere in his brief in support of his petition. Myles says in his reply brief that he did not intend to abandon his exculpatory evidence claim, and he asserts that focusing on his plea agreement claim was enough because the two claims are intrinsically intertwined. According to Myles, both claims are based on a due process right to enter a valid plea and to be sentenced based on accurate information. But Myles alleged in his other claim a due process violation based solely on a breached plea agreement; he did not allege in his petition or his brief in support that his plea was invalid or that he was sentenced based on inaccurate information. Because Myles did not discuss the exculpatory evidence claim in his brief, and because that claim is not implicit in the plea agreement claim, Myles arguably forfeited review

14

of that claim. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

Finally, Buesgen argues that, even if Myles did not waive or abandon his exculpatory evidence claim, that claim is procedurally defaulted. I agree that Myles did not fairly present his exculpatory evidence claim to the Wisconsin Court of Appeals. Myles' appellate lawyer argued that there would be no merit to challenging the validity of Myles' plea or his sentence; he did not address a potential due process challenge regarding exculpatory evidence. And Myles did not file a response to the no-merit report. He did later attempt to file a response to his lawyer's supplemental no-merit report, but as the court of appeals explained, that filing was not allowed under state law. Moreover, Myles exhausted his state-court remedies without presenting his exculpatory evidence claim through one complete round of review, and it is clear that the state courts would now find that claim procedurally barred. Myles therefore procedurally defaulted his exculpatory evidence claim.

Myles does not attempt to show cause and prejudice for his default, nor does he develop an argument that failure to consider his exculpatory evidence claim would result in a fundamental miscarriage of justice. Thus, I am precluded from reviewing the merits of that claim on habeas review. Myles therefore is not entitled to relief under § 2254 on his exculpatory evidence claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Where a district court denies a habeas petition on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (emphasis added). Here, no reasonable jurist would find it debatable whether Myles procedurally defaulted the claims raised in his federal habeas petition. And no reasonable jurist would find it debatable whether Myles' constitutional rights were violated concerning the terms of the plea agreement. I will therefore deny a certificate of appealability.

## CONCLUSION

For the reasons given above, the court **DENIES** the petition, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 11th day of June, 2024.

_STEPHEN C. DRIES_
United States Magistrate Judge